## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HAFEEZA SHAHEED., | |
| Plaintiff, | |
| | Case No.: 1:24-cv-12595-LTS |
| v. | |
| SEAPORT B/C RESIDENTIAL LLC. | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), the Defendant, Seaport B/C Residential LLC, hereby moves for judgment on the pleadings in favor of the Defendant on the grounds that counts 4, 5, 6, 7, 8, and 9 of the Plaintiff's Complaint fail to state sufficient facts for any claims for relief against the Defendant, hence there are no triable issues of material fact and Defendant is entitled to judgment as a matter of law as to said counts.

### I.    INTRODUCTION

Plaintiff filed her complaint against Defendant on or about October 23, 2024 with causes of action for, *inter alia*, violation of the Boston Planning and Development Agency (BPDA) housing program lease addendum, violation of Housing Urban Development H.U.D., and four (4) counts of violation of the Attorneys General Guide to Landlord and Tenant Lease Rights. As

demonstrated below, Defendant is entitled to judgment on the pleadings as to counts 4, 5, 6, 7, 8, and 9 of the Plaintiff's complaint.

## II.    FACTS

1. Defendant, Seaport B/C Residential LLC, is the owner of the Via Apartments located at 5 Fan Pier Blvd., Boston, Massachusetts.

2. Plaintiff is one of Defendant's tenants, residing at 5 Fan Pier Blvd., Unit 914, Boston, Massachusetts.

3. Plaintiff's lease agreement for the premises expired by its terms on August 31, 2024. As of September 1, 2024, Plaintiff's tenancy continued on a month-to-month basis pursuant to the lease agreement and applicable law. *See* Plaintiff's Complaint at Exhibit H.

4. Plaintiff's lease agreement was not renewed due to an outstanding balance in the amount of $2,630.67 as of August 31, 2024. *See* Plaintiff's Complaint at Exhibits D, H, & I.

5. On May 3, 2024, Plaintiff received notice that her RAFT application was denied for landlord failure to complete their portion of the application within 21 days of receipt. *See* Plaintiff's Complaint at Exhibit B.

6. On June 6, 2024, Plaintiff received notice that her RAFT application was denied for ***Plaintiff's*** failure to complete her portion of the application within 14 days. *See* Plaintiff's Complaint at Exhibit G.

7. On or about May 13, 2024, Defendant removed the RENT PLUS program from Plaintiff's lease. See Plaintiff's Complaint at ¶16. *See also* Plaintiff's Complaint at Exhibit D.

8. From August 31, 2024 to present date, Defendant has failed to file a summary process in Court for possession against the Plaintiff. See Plaintiff's Complaint at ¶25.

9.      From August 31, 2024 to present date, Defendant has failed to commence an eviction action
        in Court for possession. See Plaintiff's Complaint at ¶26.

## III.    LEGAL STANDARD

"A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). "To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" Man Against Xtinction v. COSCO Container Lines Amerika, Inc., C.A. No. 1:22-cv-10722-DJC, 2023 WL 3457905, at * 1 (D. Mass. May 15, 2023)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully" and demands allegations that "raise a right to relief above the speculative level." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. As such, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotation omitted).

## IV.    ARGUMENT

### a.  (Count 4) Violation of the Boston Planning and Development Agency (BPDA) Housing Program Lease Addendum.

In Count 4 of the Complaint, Plaintiff alleges that the Defendant's actions violate "Condition number 10 of the Boston Planning and Development Agency (BPDA) income-restricted housing program lease addendum." The claim appears to sound in contract as it refers to an addendum to the lease between the parties. In order to establish a breach of contract in Massachusetts, a Plaintiff must establish: (1) the existence of a valid agreement between the parties

supported by valid consideration; (2) that it was ready, willing, and able to perform; (3) a breach

of the contract; and (4) that the claimant suffered harm as a result of the breach. 477 Harrison Ave.,

LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (Mass. 2019). The elements of a breach of

contract claim must be sufficiently alleged in the pleadings, including identifying the contract, the

party's performance obligations, and how the terms of the contract were allegedly breached, or

else the claim may be dismissed by the court. Deskos v. Shagoury Ins. Agency, Inc., 2012 Mass.

App. Unpub. LEXIS 634, at *4 (Mass. App. Ct. 2012).

 Plaintiff claims in the instant complaint that her "peace and dwelling have been interrupted

by the Owner's since failure to comply with lease Shaheed's agreement(s)" and "Shaheed is unable

to peacefully dwell in her apartment as the landlord is constantly breaching the terms of her lease."

*See* Complaint at ¶¶ 36 & 37. The only cognizable claim under the aforementioned facts would be

Defendant's breach of Plaintiff's quiet enjoyment, which has not been sufficiently pled. A claim

for violation of the right to quiet enjoyment under M.G.L. c. 186 §14 requires that a tenant proves

that a landlord's acts or omissions caused serious interferences with his tenancy, which must be

acts or omissions that impair the character of the leased premises. AvalonBay Cmtys. v. Hamilton,

26 Mass. L. Rep. 436 (2010). M.G.L. c. 186 § 14 belongs to a body of statutes establishing tenants'

remedies against landlords who fail to provide safe and sanitary housing. Simon v. Solomon, 385

Mass. 91, 92 (1982). Because none of the Plaintiff's claims asserted in the Complaint have any

bearing on the safety and sanitary nature of her housing, Plaintiff fails to state a claim upon which

relief can be granted with respect to breach of a contract addendum.

 There is no dispute that Plaintiff is currently a month-to-month tenant or that the Parties

entered into a valid and binding lease agreement that governs the current month-to-month

relationship. *See* Plaintiff's Complaint at Exhibit H. It is also evident from the record that as of

her lease termination date of August 31, 2024, Plaintiff owed an outstanding rental balance in the amount of $2,630.67. *See* Plaintiff's Complaint at <u>Exhibit D</u>. In light of the foregoing, it is Plaintiff, and not Defendant, who is in breach of the lease between the parties based on the record before the Court. *See* <u>Exhibits A & B</u>. *See also* Plaintiff's Complaint at <u>Exhibit I</u>.

Simply put, there is no evidence on the record to suggest that the character or value of the leased premises has been compromised in any way, or that Plaintiff was harmed in any way as a result of any alleged breach, other than her own conclusory statements. Courts have consistently held that a plaintiff's entitlement to relief requires more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact). What is required at the pleading stage are factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement of Fed. R. Civ. P. 8(a)(2) that the plain statement possesses enough heft to show that the pleader is entitled to relief. Because Count 4 of the complaint, taken together with Plaintiff's factual allegations, does not raise a right to relief above a speculative level, Count 4 must be dismissed.

### b. *(Counts 5, 6, 7, and 9) Violation of the Attorney's General Guide to Landlord and Tenant Lease Rights*

In Counts 5, 6, 7, and 9 of the Complaint, Plaintiff alleges various violations by Defendant, including: failure to issue a notice to quit and to initiate eviction proceedings; improper imposition of rental charges to her water/sewer ledger despite a directive that such charges be credited; violation of her right to a peaceful and safe living environment; and acts of retaliation. To the extent that these claims are posited to derive from the Massachusetts Attorney General's Guide to Landlord and Tenant Rights (the "Guide," attached hereto as "Exhibit 1")) as stated in the Complaint, such reliance is misplaced. Specifically, the Guide is clearly only advisory in nature

and serves as a summary and guide in reference to certain state laws applicable to landlord-tenant relationships. *See* Exhibit 1. It does not carry the force of law, nor does it create independent, legally enforceable rights or a private right of action. Accordingly, counts 5, 6, 7 and 9 which are purportedly brought pursuant to the Guide fail to state cognizable causes of action.

A claim arises "when federal law creates a private right of action and furnishes the substantive rules of decision." Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012). "[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 121 S. Ct. 1511 (2001). "For a court to find the existence of a private right of action, it must affirmatively answer two inquiries": first, "whether Congress intended to create a private right" and, second, "whether Congress intended to create a corresponding remedy." Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 84 (1st Cir. 2004). Here, Plaintiff intends to invoke the Guide to support counts 5, 6, 7 and 9. Guidance and regulations such as these alone cannot create private rights of action; the source of the right must be a statute. Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 (1st Cir. 2007). Since Plaintiff has identified no statute from which her claims in Counts 5, 6, 7, and 9 arise, and the Guide does not create a private right of action, Counts 5, 6, 7, and 9 must be dismissed for failure to identify a cause of action and failure to state a claim upon which relief can be granted.

### c. *(Count 8) Violation of Housing Urban Development H.U.D.*

Similarly, Count 8 of the complaint must be dismissed for failure to state a claim upon which relief can be granted. The Count, as presently pled, fails to cite any specific statute, regulation, or legally cognizable right under which the Plaintiff seeks relief, instead referring vaguely to "pursuant to HUD" without further elaboration. Additionally, the allegation that Defendant violated "Shaheed's rights under HUD policy" is legally insufficient, as a general

reference to agency policy, absent identification of an enforceable legal standard or regulation, cannot serve as the basis for a viable cause of action. Courts have consistently held that it is essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with "an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied" and enables him to make a reasonable tender of settlement. <u>Spring v. Geriatric Authority of Holyoke</u>, 394 Mass. 274, 289 (1985). Given the failure to specify the policy or law that Defendant is alleged to have breached to support Count 8, and the failure of Plaintiff to provide any facts in support of this claim, and given no harm is alleged to have resulted from the alleged violation, Count 8 of the complaint must also be dismissed for failure to state a claim upon which relief may be granted.

## V.    <u>CONCLUSION</u>

As detailed herein, Plaintiff's claims in Counts 4, 5, 6, 7, 8, and 9 fail to state any claims for relief upon which relief can be granted and, accordingly, Defendant, Seaport B/C Residential LLC is entitled to a judgment of dismissal pursuant to Fed. R. Civ. P. 12(c) with respect to said counts.

Respectfully submitted,
Seaport B/C Residential LLC
By its attorney,

_____
Scott D. Carman, Esq., BBO# 672469
KREMS, JACKOWITZ & CARMAN LLP
141 Tremont Street
Boston, MA 02111
T: 617.556.0244
F: 617.556.0284
scarman@kjcllp.com

April 14, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, this document was served to Plaintiff via email at

hafeeshahee@yahoo.com and via first class mail, postage prepaid, to the following address:

Hafeeza Shaheed
5 Fan Pier Blvd #914
Boston, MA 02210

_____

Scott D. Carman

## **CERTIFICATE OF ATTEMPT TO CONFER**

I hereby certify that on April 9, 2025, the parties conferred in a good faith effort to

resolve or narrow the matters that are subject of the foregoing motion.

_____

Scott D. Carman

# EXHIBIT 1

# The Attorney General's

# Guide to Landlord/Tenant Rights

## Commonwealth of Massachusetts

## Office of Attorney General



August 2015

Dear Massachusetts Resident,

Across the Commonwealth of Massachusetts, thousands of residents elect to rent their homes, while thousands of others serve as landlords. When entering into a rental agreement, there are a number of issues that both landlords and tenants must consider.

This guide outlines rental agreement considerations, as well as rules regarding types of tenancies, payments, evictions, habitable living conditions, and housing discrimination. It is important for both landlords and tenants to understand the laws and regulations that govern all aspects of rental arrangements.

I encourage you to review this guide and be aware of your rights before entering into a rental agreement. Our Public Inquiry and Assistance Center is available to answer additional questions at (617) 727-8400.

Sincerely,

Massachusetts Attorney General

Case 1:24-cv-12595-LTS    Document 28    Filed 04/14/25    Page 13 of 27

# Contents

Information About Renting an Apartment in
Massachusetts..............................................................................3

The Terms of Tenancy...............................................................4

   A. Tenancy Based on a Lease ...................................................... 4

   B. Tenancy-at-Will ........................................................................ 5

   C. Obligations of the Landlord and of the Tenant................... 5

   D. Negotiations ............................................................................ 6

Terms of a Rental Agreement...............................................6

Payments at the Start of a Tenancy ..................................7

   A. Laws Governing the Security Deposit.................................. 7

   B. Laws Governing the Last Month's Rent ............................... 8

The State Sanitary Code and the Condition of an
Apartment....................................................................................8

Eviction .........................................................................................9

   A. Mediation as an Option ......................................................... 10

   B. The Eviction Process .............................................................. 10

Discrimination in Housing is Against the Law.........10

Resources....................................................................................11

# Information About Renting an Apartment in Massachusetts

There are many laws and regulations that govern the relationship between a landlord and a tenant in Massachusetts. These laws apply whether you live in or own a two-family home with an apartment or a multi-family apartment building. Some laws outline the landlord's obligations and others set forth what a tenant must do.

In addition to these laws, there are several issues that all prospective tenants and landlords should consider before renting an apartment. For example:

- ❖ Does the rent cover all utilities? If the tenant is responsible for paying for the heat and hot water, the landlord should make clear whether these run on electric power, oil, natural gas, or propane. Is there is information available that will provide a prospective tenant with an idea of the annual utility costs for the apartment?

- ❖ The landlord and the prospective tenant together should check every plumbing fixture, light switch, cupboard door, and appliance to make sure they all work properly. If repairs are necessary, both parties should discuss whether the landlord will make the repairs before the tenant moves in.

- ❖ Similarly, the lease or rental agreement should include a list of all repairs that the landlord agrees to make during the tenancy, and the timeframe in which the repairs must be completed.

- ❖ The lease or rental agreement should also note if major appliances are included with the tenancy, such as a refrigerator, stove, washing machine, etc.

- ❖ Under Massachusetts Law, it is the landlord's responsibility to clear snow and ice from the property. Your city/town may also have an ordinance requiring that the landlord clear snow and ice from the public sidewalk that abuts the property.

- ❖ In Massachusetts, a landlord cannot require a tenant to pay an additional monthly fee for amenities on the property, like private parking, a pool, or workout room, but may restrict access to these amenities to only those who agree to pay. If amenities are present, what is the additional cost associated with access?

❖ Will the landlord or the tenant be responsible for shoveling snow from the walks in winter? Is it plowed from the driveway or parking area? Is there a fee involved, and if so, who pays for it?

❖ When was the last time the rental property was inspected for compliance with the local building and/or state sanitary codes? A local ordinance may require that a landlord register rental properties with the city or town to ensure that they have met building, zoning, and sanitary code requirements.

❖ Does the landlord allow tenants to keep pets in the rental property? Will landlord require a tenant to pay a higher-than-advertised monthly rent to keep a pet and/or require the addition of a pet rider to the tenants renter's insurance policy?

## The Terms of Tenancy

There are two main kinds of tenancy. The rights and responsibilities of both the landlord and the tenant depend partly on the type of tenancy that is created.

## A. Tenancy Based on a Lease

One kind of tenancy is based on a written lease. When a tenant signs a lease with a landlord, the tenant agrees that the tenancy will last for a certain amount of time, usually one year. During that time, the monthly rent will stay the same and the landlord cannot end the tenancy (evict) unless the tenant fails to satisfy the conditions agreed upon in the lease. On the other hand, the tenant is committed to paying rent for the term of the lease. The tenant may only end the tenancy before the close of the lease term if the landlord agrees to early termination of the lease.

A lease is a good option for tenants and landlords seeking stability in a tenancy. Because it is a written agreement between the tenant and the landlord, it should contain all of the rules that will apply to the tenancy.

## B. Tenancy-at-Will

The other kind of tenancy is called a tenancy-at-will, which means that the lease agreement lasts for as long as both parties want to do business with each other. Sometimes there is no written agreement at all in a tenancy-at-will, but often the tenant is asked to sign a form that says "Rental Agreement" or "Tenancy-at-Will" at the top. This form should include the amount of the monthly rent and basic rules.

A tenancy-at-will does not last for any set amount of time and does not end on a certain date, the way a lease does. In a tenancy-at-will the tenant pays the agreed-upon rent each month for an indefinite period of time. Either the landlord or the tenant can decide to end the tenancy by giving the other party notice, either 30 days or one month before the due date of the next rent payment, whichever is longer. In this type of agreement, the rent can change with notice according to the same terms (either 30 days or one month before the due date of the next rent payment, whichever is longer).

## C. Obligations of the Landlord and of the Tenant

Whether a lease or a tenancy-at-will, the tenant must pay rent, follow the rules agreed upon with the landlord, and accept responsibility for any damage to the apartment that is more than just "normal wear and tear" (whether caused by the tenant or caused by a guest of the tenant). The landlord must provide an apartment that is safe, clean, and in compliance with the Massachusetts Sanitary Code, and must live up to any promises in the lease or rental agreement.

In either kind of tenancy, the tenant has a right to occupy the apartment and the landlord may only enter under certain circumstances. The landlord must arrange with the tenant in advance to enter the apartment to make repairs, to inspect the condition of the apartment, or to show the apartment to prospective tenants, buyers or real estate agents. However, the landlord may enter an apartment without a tenant's approval if there is a mechanical/repair emergency that has the potential to damage the whole building, or if it appears that the tenant has abandoned the apartment. **M.G.L. c. 186, § 15A-F, §16**.

Guide to Landlord/Tenant Rights

## D. Negotiations

Although not required by laws or regulations, it is important for both a landlord and a tenant to know that they can negotiate with each other over the terms of a lease. In general, the landlord should not rush a tenant to make a decision, and both parties should be very clear about the terms and conditions before either signs the lease. Any changes to which they agree should be written down into the lease in pen, making sure to cross out any sections that the landlord and tenant agree to change.

## Terms of a Rental Agreement

Every rental agreement must have certain terms, and is prohibited by law from containing certain other terms. **M.G.L. c. 186, § 15A-F, §16**.

The lease must set forth the name, address, and phone number of the owner, the person responsible for maintenance, and the person to whom the tenant can give copies of formal notices, complaints, or court papers.

If the landlord receives a security deposit, the lease or rental agreement must show the amount paid, and must explain the tenant's rights to that security deposit money. **M.G.L. c. 186, § 15B**.

The landlord must make sure that the tenant is given a legible copy of the lease or rental agreement. **M.G.L. c. 186, § 15D**. The lease must not include illegal terms such as:

- ❖ The tenant must pay for the cost of repairing ordinary wear and tear to the apartment.
- ❖ The tenant must pay for repairs to parts of the building beyond the tenant's apartment.
- ❖ The tenant may not sue the landlord or report violations of the Sanitary Code.
- ❖ The tenant may not join a tenants' union.
- ❖ The tenant must pay a late fee if a rent payment is even one day late. (A lease or rental agreement may permit the landlord to charge a late fee if a rent payment is 30 or more days late.)

## Payments at the Start of a Tenancy

A landlord may only ask for the following payments up front:

- ❖ The first month's rent
- ❖ A security deposit to cover the cost of any damage to the apartment beyond normal wear and tear (which may not exceed the amount of one month's rent)
- ❖ The last month's rent (the month that will turn out to be the tenant's last one in the apartment)
- ❖ The cost of a new lock and key for the apartment

The landlord should provide a signed receipt for any payment that is made with cash or a money order. The receipt must include the amount paid and the date the payment was made, and a description of what the payment was for. The receipt should also include the landlord's name, the tenant's name, and the name of the person to whom the payment was given. **M.G.L. c. 186, § 15B.**

## A. Laws Governing the Security Deposit

All security deposits must be deposited in a Massachusetts bank, in an account that collects interest, and within the first month of the tenancy. The landlord must provide the tenant with the name and address of the bank holding the security deposit, plus the actual account number. Each year, the landlord must either pay the tenant the interest on the security deposit or let the tenant deduct that amount from a rent payment.

The landlord should give the tenant a "statement of condition" within 10 days of beginning the tenancy or upon receipt of the security deposit (whichever is later), which describes the condition of the apartment and any damage that exists at that time. The tenant has 15 days to add to the "statement of condition" or make changes to it. Both parties should keep copies of the final "statement of condition." **M.G.L. c. 186, § 15B.**

When the tenancy ends, the landlord must return the security deposit, plus interest, within 30 days. However, the landlord may keep any unpaid rent or the amount of money needed to repair damage done to the apartment (beyond normal wear and tear). If the lease provides for it, the landlord may also deduct the tenant's share of any increase in the landlord's property taxes.

If the landlord must keep all or a part of the security deposit for damages, then the landlord must give the tenant a written description of the damage and an estimate of the repair cost within 30 days of the tenant moving out.

## B. Laws Governing the Last Month's Rent

If the tenant provides the landlord with the last month's rent at the commencement of the tenancy, then the landlord must give the tenant a signed receipt. Like all receipts in the tenancy process, the receipt must include the amount paid, the date the payment was made, a description of what the payment was for, the landlord's name, the tenant's name, and the name of the person to whom the payment was given. At the end of each year and when the tenancy ends, the tenant is entitled to any interest earned on the last month's rent. **M.G.L. c. 186, § 15B.**

## The State Sanitary Code and the Condition of an Apartment

In Massachusetts, the State Sanitary Code (**105 C.M.R. 410**) governs what it means to provide a habitable place in which to live. In general, "habitable" means a place that is comfortable and clean enough for a person to live safely.

If a landlord does not respond to a tenant's complaints about a Sanitary Code violation, the tenant may request that a code enforcement officer or the local board of health inspect the apartment. An inspector can then come to the apartment, review the conditions, and order the landlord to fix the problem if deemed necessary. In the event that the landlord still fails to fix the problem, a tenant may be able to withhold a portion of the rent or move out, even if there is a lease or rental agreement in place. **M.G.L. c. 111, § 198; 105 C.M.R. 410.** However, before either withholding rent or moving out, tenants considering these options should contact a private lawyer or legal services for more information and advice.

Under federal and state law, If the rental property was built before 1978, the landlord and tenant must sign and retain a copy of the Tenant Lead Law Notification and Tenant Certification. These forms are to inform the Tenant of known risks and causes of lead poisoning and

disclose if it is known that lead-based paint is present in the rental unit. A landlord must also disclose documents related to any lead inspection or risk assessment done on the rental unit, and a Letter of Interim Control or Letter of Compliance issued by the local board of Health. If a child under six will be living in the rental property, the landlord is obligated to delead or bring the lead hazards under interim control.

For more information about the State Sanitary Code, a tenant can also call the Secretary of the Commonwealth's Citizen Information Service hotline at 617-727-7030 or 1-800-392-6090 (in MA only).

## Eviction

Generally, a landlord cannot simply take possession of the rental property, physically remove the tenant or their personal property, or change the locks. Depending on the reason for eviction, a landlord must provide either a 14-Day or 30-day Notice to Quit to the Tenant. A landlord must then file a civil action (Summary Process) in court, and obtain a judgment from the court that specifies the date that the tenant must leave the rental property with their belongings. If the tenant does not voluntarily leave on the date specified by the court, a landlord must arrange for a Sheriff or Constable to serve an executed Judgment on the tenant ordering them to leave, and if necessary, relocate any personal property belonging to the tenant to a licensed public warehouse. In this situation, the landlord is obligated to pay moving fees, but is entitled to reimbursement from the tenant. The tenant is allowed a one-time opportunity to claim items of personal or sentimental value from the storage facility, and can claim all personal property from the storage facility upon payment of any fees charged by the storage facility. **M.G.L. c. 239; M.G.L. c. 186, § 11; M.G.L. c. 105.**

## A. Mediation as an Option

If the landlord and the tenant agree, they may utilize mediation services through the Attorney General's Office to resolve a dispute that might otherwise result in an eviction. In addition, the Massachusetts Communities and Development Housing Services Program or the local housing court can provide help in resolving a dispute between a landlord and a tenant.

## B. The Eviction Process

The formal eviction process is called Summary Process and starts when the landlord files a Complaint in court. During the eviction process the tenant will have the right to raise defenses to the eviction itself and present counterclaims for monetary damages. Some common defenses to eviction include:

❖ Failure to properly terminate the tenancy.

❖ The landlord failed to correct known conditions.

❖ The landlord is evicting you in retaliation for activities protected by law.

❖ Discrimination, including that the landlord failed to make a reasonable accommodation to allow a disabled person to remain in the home despite his or her disability.

## Discrimination in Housing is Against the Law

It is against the law for a landlord to refuse to rent an apartment to someone because of the person's race, color, national origin, ancestry, gender, marital status, religion, age, sexual orientation, gender identity or expression or military background, or because the person is disabled. With very limited exceptions, it is also illegal to refuse to rent to someone with children. For more information about housing discrimination, contact the Civil Rights Division of the Attorney General's Office or the Massachusetts Commission Against Discrimination.

Massachusetts Attorney General's Office

**Resources**

**Office of the Attorney General**
   http://www.mass.gov/ago
   (617) 727-8400 Public Inquiry and Assistance Center
   (617) 963-2917 Civil Rights Division
   (617) 963-2939 Disability Rights
   One Ashburton Place
   Boston, MA 02108

**Massachusetts Department of Housing and**
**Community Development**
   http://www.mass.gov/dhcd
   (617) 573-1100
   100 Cambridge St., Suite 300
   Boston, MA 02114

**Massachusetts Housing Court**
   http://www.mass.gov/courts/court-info/trial-court/hc/
   (617) 788-6500
   Edward W. Brooke Courthouse
   24 New Chardon Street, 6th Floor
   Boston, MA 02114-4703

**Massachusetts Commission Against Discrimination**
   http://www.mass.gov/mcad
   (617) 994-6000 Boston
   One Ashburton Place, Room 601
   Boston, MA 02108

   (413) 739-2145 Springfield
   436 Dwight Street, Room 220
   Springfield, MA 01103

**Massachusetts Department of Public Health**
**Childhood Lead Poising Prevention Program**
   http://www.mass.gov/dph/clppp
   (617) 624-5759
   250 Washington Street
   Boston, MA 02108





**Office of Attorney General**
One Ashburton Place
Boston, MA 02108
(617) 727-2200
www.mass.gov/ago